**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION**

| | | |
|---|---|---|
| Tamar Yaron Bryant, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 9:22-cv-03321-TMC |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| Warden of Lee Correctional Institution, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |
| | ) | |

Petitioner Tamar Yaron Bryant ("Petitioner"), a state prisoner, filed this Petition for Writ of Habeas Corpus *pro se* on September 28, 2022. (ECF No. 1). In accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(c), D.S.C., this matter was referred to a magistrate judge for pretrial handling. On December 29, 2022, attorney Elizabeth Anne Franklin-Best appeared on behalf of Petitioner and has since represented him in this matter. (ECF No. 16). On February 10, 2023, Respondent filed his Return and a Motion for Summary Judgment. (ECF Nos. 19; 20). Petitioner filed a response in opposition to the motion (ECF No. 21), and Respondent replied (ECF No. 22). Now before the court is the magistrate judge's Report and Recommendation ("Report"), recommending the court grant Respondent's motion for summary judgment. (ECF No. 23). Petitioner filed his objections to the Report with the assistance of counsel on May 17, 2023, (ECF No. 24), Respondent filed a reply (ECF No. 25), and this matter is now ripe for review.

**STANDARD OF REVIEW**

The recommendations set forth in the Report have no presumptive weight, and this court remains responsible for making a final determination in this matter. *Elijah v. Dunbar*, 66 F.4th 454, 459 (4th Cir. 2023) (citing *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976)). The court is

charged with making a *de novo* determination of those portions of the Report to which a specific objection is made, and the court may accept, reject, modify, in whole or in part, the recommendation of the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1). Thus, "[t]o trigger de novo review, an objecting party 'must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" *Elijah*, 66 F.4th at 460 (quoting *United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007)). However, the court need only review for clear error "those portions which are not objected to—including those portions to which only 'general and conclusory' objections have been made[.]" *Dunlap v. TM Trucking of the Carolinas, LLC*, 288 F. Supp. 3d 654, 662 (D.S.C. 2017); *see also Elijah*, 66 F.4th at 460 (noting that "[i]f a litigant objects only generally, the district court reviews the magistrate's recommendation for clear error only"). Furthermore, "'the court is not obligated to consider new arguments raised by a party for the first time in objections to the magistrate's Report.'" *Floyd v. City of Spartanburg S.C.*, Civ. A. No. 7:20-cv-1305-TMC, 2022 WL 796819, at *9 (D.S.C. Mar. 16, 2022) (quoting *Elliott v. Oldcastle Lawn & Garden, Inc.*, No. 2:16-cv-01929-DCN, 2017 WL 1206408, at *3 (D.S.C. Mar. 31, 2017); *see also Elijah*, 66 F.4th at 460 n. 3 (noting "district court judges are not required to consider new arguments posed in objections to the magistrate's recommendation").

Additionally, since Petitioner is represented by counsel in this action, the rules regarding liberal construction of *pro se* pleadings and filings do not apply in this instance.

## PROCEDURAL HISTORY[1]

On May 18, 2011, Petitioner was indicted by the Georgetown County Grand Jury on one count for murder. (ECF No. 19-1 at 336–37). Petitioner was represented by Assistant Public Defender Ronald Hazzard and proceeded to trial in March 2013. *See* (ECF Nos. 19 at 1; 19-1 at 3–335). The jury found Petitioner guilty, and he was sentenced to thirty-five years of incarceration. (ECF No. 19-1 at 327–29, 333). Petitioner appealed his conviction and sentence, arguing the trial court erred in refusing to order a mental competency examination. *See id.* at 375–94. On December 3, 2014, the South Carolina Court of Appeals affirmed the trial court's decision in an unpublished opinion. *See State v. Bryant*, No. 2014-UP-440, 2014 WL 6791848 (S.C. Ct. App. Dec. 3, 2014). The remittitur was delivered to the Georgetown County Clerk of Court on December 19, 2014. (ECF No. 19-1 at 422).

Subsequently, on December 9, 2015, Petitioner filed an application for post-conviction relief ("PCR"), (ECF No. 19-2 at 3–9), and the State filed its Return on February 5, 2016, *id.* at 10–15. Petitioner then filed an amended PCR application in August 2018, asserting ineffective assistance of trial counsel for (1) failing to properly advise Petitioner about him testifying at his *Jackson v. Denno*[2] hearing; (2) the handling of witness Shaquettia Holmes; (3) failing to object to the jury instruction on malice for lacking the general permissive instruction; and (4) failing to object to the trial court's comments to the jury regarding "searching for the truth;" and ineffective assistance of appellate counsel for failing to raise the admissibility of Petitioner's confession. *Id.* at 16–17. An evidentiary hearing on Petitioner's amended application was held on March 25,

---

[1] The factual background and procedural history set forth herein are taken from Respondent's memorandum in support of his motion for summary judgment and the attachments thereto, (ECF Nos. 19; 19-1; 19-2; 19-3; 19-4; 19-5; 19-6) to which Petitioner does not object, *see* (ECF No. 21).

[2] 378 U.S. 368 (1964).

2019, before Judge William Seals. *Id*. at 18–83. Petitioner was represented at the hearing by attorney Tricia A. Blanchette. *Id*. at 18. During the hearing, Petitioner, his trial counsel, and appellate counsel all testified. *See id*. at 22–76. On December 5, 2019, Judge Seals entered an order dismissing Petitioner's amended application for relief. *Id*. at 86–112. Petitioner then filed a motion for reconsideration pursuant to South Carolina Rule of Civil Procedure 59(e), *id*. at 113–17, which was denied on March 6, 2020, *id*. at 118–19.

On April 8, 2020, Petitioner, represented by PCR counsel, appealed the PCR court's ruling to the South Carolina Supreme Court, (ECF No. 19-3 at 1), and subsequently, on April 19, 2021, filed a petition for writ of certiorari in the South Carolina Supreme Court, (ECF No. 19-4). Specifically, Petitioner argued the PCR court "erred in failing to grant a new trial due to ineffective assistance of counsel for failure to enter an objection or exception to the jury instruction on malice for lacking the general permissive inference instruction[.]" *Id*. at 3. On April 19, 2021, the Supreme Court transferred Petitioner's appeal to the South Carolina Court of Appeals who, thereafter, denied Petitioner's petition for a writ of certiorari on August 19, 2022, (ECF No. 19-5).

Consequently, Petitioner initiated this action *pro se* on September 28, 2022, alleging ineffective assistance of counsel on the same four grounds he raised in his amended PCR application. (ECF No. 1). On February 10, 2023, Respondent filed his return and a Motion for Summary Judgment. (ECF Nos. 19; 20). Petitioner, with the assistance of counsel,[3] filed a response in opposition to Respondent's motion, (ECF No. 21), and Respondent replied (ECF No. 22). The magistrate judge entered her Report on May 11, 2023, recommending the undersigned grant Respondent's motion for summary judgment. (ECF No. 23). As discussed above, Petitioner filed objections to the Report, (ECF No. 24), and Respondent replied (ECF No. 25).

---

[3] While the Petition was filed pro se, on December 29, 2022, counsel of record filed a Notice of Appearance. (ECF No. 16). After December 29, 2022, all further filings of Petitioner were made with the assistance of counsel.

**MAGISTRATE JUDGE'S REPORT**

In her Report, the magistrate judge recommends that the undersigned grant Respondent's Motion for Summary Judgment.  (ECF No. 23 at 1, 28).  The magistrate judge first set forth the deferential standard of review afforded state court decisions challenged in habeas petitions under 28 U.S.C. § 2254(d).  *Id*. at 5–7.  She then discussed the two-part test for ineffective assistance of counsel claims set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  *Id*. at 7–8.  Petitioner's first claim asserts that his trial counsel was ineffective in failing to advise Petitioner of his right to testify at the *Jackson v. Denno* hearing.  After quoting extensively from both Petitioner's and his trial counsel's testimony at the PCR hearing, as well as the PCR court's analysis and ruling, the magistrate judge concluded that, "the PCR Judge did not apply *Strickland* unreasonably or base his adjudication on an unreasonable determination of the facts in finding Trial Counsel not deficient."  *Id*. at 12.  In particular, the magistrate judge found that trial counsel "credibly testified as to his repeated efforts to apprise Petitioner of his rights leading up to the *Denno* hearing[,]" and, indeed, "the *Denno* hearing transcript reflects that both Trial Counsel and the Trial Judge explained to Petitioner his right to testify, but Petitioner ultimately chose not to."  *Id*.  Similarly, as to the prejudice analysis, the magistrate judge noted, "the PCR Judge found, and the PCR transcript reflects, that Petitioner asserted that he knew he had a right to remain silent, and that he knowingly and deliberately gave a false statement to law enforcement[,]" such that the PCR court concluded that "Petitioner's 'cavalier attitude toward the truth' . . . would have 'more likely harmed his chances of prevailing upon the motion to suppress.'"  *Id*. at 12–13 (quoting ECF No. 19-2 at 98–99).

Turning to Petitioner's second claim that trial counsel was ineffective in not objecting to the trial court's failure to give a "permissive inference" jury instruction, the magistrate judge set

forth the detailed history of South Carolina law on this issue from the PCR court's order.  *Id*. at 13–14 (quoting ECF No. 19-2 at 104–05).  The magistrate judge noted that, under South Carolina law, an "*Elmore* Charge"[4] "consists of two sentences: the first sentence of the charge is the 'standard implied malice charge' and the second sentence is the 'general permissive inference instruction.'"  (ECF No. 23 at 15).  Further, the magistrate judge found that, "[a]s the PCR Judge noted, the general permissive inference instruction—i.e., the second sentence of the *Elmore* Charge—is only required in those situations where the trial court instructs the jury that malice could be inferred from the use of a deadly weapon."  *Id*. at 16.  The magistrate judge correctly found that in this case "the first sentence of the *Elmore* Charge—i.e., the 'standard implied malice charge'—was not given to the jury[,]" and thus, "here, the general permissive inference instruction was not needed, and Trial Counsel was not deficient by not requesting any further jury instruction on that issue."  *Id*.  Therefore, the magistrate judge concluded that Petitioner failed to show the PCR Judge's finding that trial counsel was not deficient was unreasonable.  *Id*.

The magistrate judge then addressed the prejudice prong as to this claim.  *See id*. at 16–17.  The magistrate judge reasoned as follows:

> [T]he undersigned is unable to see how Petitioner was possibly prejudiced by the absence of this general permissive inference instruction.  Again, the Trial Judge did *not* instruct the jury on the inference of malice from the use of a deadly weapon—i.e., the first sentence of the *Elmore* Charge.  The general permissive inference that Petitioner argues was required is: "If facts are proved beyond a reasonable doubt, sufficient to raise an inference of malice to your satisfaction, this inference would be simply an evidentiary fact to be taken into consideration by you, the jury, along with other evidence in the case, and you may give it such weight as you determine it should receive."  Petitioner insists the absence of this instruction changed the outcome of the trial, but he fails to explain how.  Indeed, the undersigned agrees with the PCR Judge's observation that this instruction does little more than tell the jury what it already knows:

---

[4] *State v. Elmore*, 279 S.C. 417, 803 S.E.2d 781 (1983), *overruled on other grounds by State v. Torrence*, 305 S.C. 45, 69 n.5, 406 S.E.2d 315, 328 n.5 (1991).

> that they may use evidence and give it such weight as they determine
> it should receive.

*Id.* (emphasis in original) (internal citations omitted). Consequently, the magistrate judge concluded that the PCR court's finding of no prejudice was not unreasonable. *Id.* at 17.

Petitioner's third claim asserts that trial counsel was ineffective for failing to object to the trial court's opening remarks to the jury about the trial being a "search for the truth." *See* (ECF No. 1-3 at 9). The magistrate judge set forth the relevant portion of the trial court's opening remarks to the jury at the beginning of trial:

> I want to thank you for being here and serving as jurors in this court.
> It seems that every time we turn on the TV there is a trial going on
> of some sort [or] some sort of TV show or movie, and every one of
> those trials seems to be the most riveting and exciting things that
> you can imagine. In reality that's not necessarily how a trial really
> goes. *The search for the truth* is often tedious, repetitive and slow
> and that's as it should be for we have here at stake this, this day, this
> week is not only the right of the State to punish those that it feels
> has or have violated the laws of this State, but also we have the
> liberty of this Defendant at stake and he has plead not guilty to the
> indictment that I presented to you earlier, and again, I want to make
> sure that you understand that this indictment is not evidence in this
> case, it is just the document by which he is charged.
>
> . . .
>
> [Y]ou as jurors will judge the credibility or believability of every
> witness who testifies in this trial. In doing so you can apply just
> about any test that you in your experience have determined to be a
> fair and reasonable and responsible way of *determining what the
> truth is*.

(ECF No. 23 at 17–18 (quoting ECF No. 19-1 at 76–77, 77–78) (emphasis in original)). The magistrate judge noted that trial counsel had explained that he "did not have a strategic reason for not objecting" to this language at trial but that Petitioner's trial "occurred before the Supreme Court of South Carolina's admonition against truth-seeking language when addressing the jury." *Id.* at 18 (citing ECF No. 19-2 at 38). After discussing South Carolina case law, the PCR Judge

determined that Petitioner had "failed to show any deficiency. . . or any prejudice from the deficiency alleged." (ECF No. 19-2 at 109). In reaching this conclusion, the PCR Judge specifically noted that:

> [t]he "truth seeking" language employed by [the Trial Judge] appears to be precisely of the kind held to be acceptable in *Aleksey*[5], and substantially less concerning than the comments addressed in *Beaty*[6], which affirmatively described a trial as "a search for the truth in an effort to make sure that justice is done." *Beaty*, 423 S.C. at 32, 813 S.E.2d at 505. If the comments at issue in *Beaty* were not sufficient to prejudice the defendant, the comments at issue here absolutely do not prejudice [Petitioner].

*Id.*

In her Report, the magistrate judge determined that the PCR Judge's "rejection of this claim of ineffective assistance of counsel is not contrary to, or an unreasonable application of, clearly established federal law, nor did the PCR Judge's adjudication result in an unreasonable determination of the facts." (ECF No. 23 at 18). She reasoned that at the time of Petitioner's trial, the case law concerning "'search for the truth' language focused on jury instructions that ran the risk of unconstitutionally shifting the burden to the defendant" and that it was "not until 2018 that the Supreme Court of South Carolina expressed that trial courts should not use 'search for the truth' language when addressing the jury in opening remarks.'" *Id.* at 19 (citations omitted). Accordingly, she concluded that the PCR Judge's determination that trial counsel was not deficient for failing to object to such language was not unreasonable. *Id.*

The magistrate judge further determined that "[e]ven if [t]rial [c]ounsel should have objected" she agreed that "Petitioner nevertheless failed to show prejudice." *Id.* In reaching this conclusion, she noted that the trial judge had "repeatedly" charged the jury that the Petitioner was presumed innocent unless and until the State proved him guilty beyond a reasonable doubt, (ECF

---

[5] *State v. Aleksey*, 538 S.E.2d 248 (S.C. 2000).
[6] *State v. Beaty*, 813 S.E.2d 502 (S.C. 2018).

No. 23 at 20 (citing ECF No. 19-2 at 108)), and that Petitioner had failed to demonstrate how the "search for the truth" language had "infected the Trial Judge's repeated instructions to the jury at the close of trial as to the burden of proof beyond a reasonable doubt" *id.* at 20. Therefore, the magistrate judge determined that the PCR Judge's "finding as to prejudice was not unreasonable." *Id.* at 20.

In Petitioner's fourth and final claim, he argues that Trial Counsel was ineffective in his handling of Saquettia Holmes, one of the State's witnesses at trial. (ECF No. 1-3 at 11). Specifically, he argues that Trial Counsel did not sufficiently cross-examine Holmes about her statements to law enforcement regarding the identity of the shooter. (ECF No. 21 at 11). In her Report, the magistrate judge quoted substantial portions of the PCR Court's summation of Trial Counsel's cross-examination of Ms. Holmes, including Ms. Holmes's initial statement that she initially believed her uncle, Laverne, had shot the victim. (ECF No. 23 at 22 (citing ECF No. 19-1 at 140–42)). However, the magistrate judge also noted that at the PCR hearing, Trial Counsel testified, and the PCR Judge indicated:

> At the evidentiary hearing, Trial Counsel testified he and [Petitioner] discussed [Petitioner's] version of what occurred the night of the killing. [Petitioner] admitted to Trial Counsel he was present at the club on the night of the killing, and that he had been in the bathroom with Holmes, two other women, and the victim. [Petitioner] told Trial Counsel that Holmes would be able to confirm that [Petitioner] was not in the restroom at the time of the shooting. Trial Counsel recalled that Holmes gave two statements to law enforcement. Holmes' first statement neither confirmed nor denied [Petitioner] shot the victim. Trial Counsel directed a private investigator in the employ of the public defender's office, F. Jerome Randall, to separately interview Holmes, which occurred on December 11, 2012. Randall reported to Trial Counsel:
>
> > Ms. Holmes states that on the night of the incident at the club in Plantersville she was in the bathroom with the victim Mr. Myers and [Petitioner]. Ms. Holmes states that [Petitioner] and the victim had a conversation inside the bathroom; however it was not a hostile meeting. She cannot remember

> what was said exactly. She does remember telling the victim to calm down and just be cool because she knew the guys did not run up in there for NO reason. She knew or suspected that they all had guns. She knew that [Petitioner] had a gun from being in the bathroom with him. Mr. Myers and [Petitioner] walked out of the bathroom ahead of Ms. Holmes and as soon as she reached the door the shots rang out. She cannot sa[y] who did the shooting, she remain[ed] inside the restroom until things calm[ed] down.
>
> (Applicant's Exhibit #1). Holmes' second statement to law enforcement and the prosecution in March 2013, however, unequivocally confirmed [Petitioner] shot the victim. (Applicant's Exhibit #2). Trial Counsel conveyed the substance of the statements to [Petitioner] and discussed them with him. When asked why he did not confront Holmes with Randall's affidavit, Trial Counsel noted that Holmes did not state that [Petitioner] committed the crime. Trial Counsel additionally noted the affidavit was a synopsis of what Holmes told Randall, and not her own sworn statement. Trial Counsel explained that he would have needed to call Randall as a witness in order to get the affidavit in for a very small gain, and in the process would have lost the right to the final closing argument. On cross examination, Trial Counsel testified that during his March 1, 2013, meeting with [Petitioner], [Petitioner] indicated he did not wish to call witnesses in his own defense. With respect to Holmes, [Petitioner] opined that he did not want her due to her connections to the victim. On redirect examination, Trial Counsel acknowledged that Holmes testified no ill words were exchanged between [Petitioner] and the victim prior to the shooting.

(ECF No. 23 at 22 (quoting ECF No. 19-2 at 102–03)). Additionally, Petitioner also testified at the PCR hearing and indicated that he believed Holmes could have testified he was never at the club, and that he had asked Trial Counsel to cross examine Holmes about her "lying repeatedly" and have her "clarify that [Petitioner] wasn't the one that was the shooter or that she didn't see [Petitioner]." (ECF No. 19-2 at 64). However, Petitioner also testified that he was aware Holmes had indicated to the Private Investigator that she saw Petitioner at the club and that her testimony would reflect that. *Id.* at 65.

Ultimately, the PCR Judge weighed the credibility of the witnesses and determined that Petitioner had failed to demonstrate that Trial Counsel was ineffective in this regard. The

magistrate judge quoted the PCR Court's determination in her Report, which included that, as to Holmes's statements, Trial Counsel "did confront Holmes with her initial statements to first responders, which she ultimately admitted, such that he could not have introduced any extrinsic evidence of the first statement." (ECF No. 23 at 24 (citing ECF No. 19-2 at 103–04)). Furthermore, the PCR Judge determined that "Holmes['s] testimony was largely consistent, such that her prior consistent statement would have constituted hearsay. Additionally, Trial Counsel articulated a valid strategic reason to not introduce the statement to the private investigator—it was of limited value to his client and would have cost him the final argument." *Id.* Finally, as to Holmes' second statement to authorities, "the summation provided to Trial Counsel inculpated his client more than Holmes' trial testimony, where she never identified [Petitioner] as the shooter, such that any attempt to bring it in would have doubtlessly harmed [Petitioner's] defense." *Id.*

In her Report, the magistrate judge found that the PCR Judge had not applied *Strickland* unreasonably or based his decision on an unreasonable determination of the facts. *Id.* at 25. She summarized the relevant case law regarding the presumption that counsel "'made all significant decisions in exercise of reasonable professional judgment[,]'" *id.* (quoting *Cullen v. Pinholster,* 563 U.S. 170, 196 (2011)), and explained that to overcome such presumption, Petitioner would need to show "that no fair-minded jurist" could find Trial Counsel's reasons for his or her decisions "to be sound trial strategy[,]" *id.* (citing 28 U.S.C. § 2254(d); *Harrington v. Richter*, 662 U.S. 86, 105 (2011)). Based on this presumption and in light of the testimony offered at the PCR hearing, the magistrate judge determined that the PCR Judge was not unreasonable in his analysis under *Strickland*. Additionally, the magistrate judge indicated that even if it were assumed that Trial Counsel was deficient in this regard, the PCR judge had determined that Petitioner had failed to show prejudice, and the magistrate judge agreed. *Id*. at 27. Specifically, the magistrate judge

indicated that in reaching this determination, the PCR Judge had considered the "evidence that conclusively pointed to Petitioner's guilt" including testimony that Petitioner confessed to shooting the victim, Petitioner's own confession, and the bullet recovered from the victim that matched the revolver that Petitioner confessed to using. *Id.* (citing ECF No. 19-2 at 104). Accordingly, the magistrate judge determined that given the facts, the PCR Judge's determination that the Petitioner had failed to demonstrate prejudice was not unreasonable. *Id.*

Accordingly, based on the foregoing, the magistrate judge recommends that this court grant Respondent's motion for summary judgment. (ECF No. 20).

## LAW AND ANALYSIS

Turning to the applicable law and Petitioner's objections to the Report, the court notes that as the magistrate judge correctly noted, under 28 U.S.C. § 2254(d),

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in the state court proceedings unless the adjudication of the claim –

> (1) Resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the State court proceeding.

"[T]o grant [a] habeas petition, [the court] must conclude that the state court's adjudication of [the petitioner's] claims was not only incorrect, but that it was objectively unreasonable." *McHone v. Polk*, 392 F.3d 691, 719 (4th Cir. 2004). Additionally, the factual findings of the state court are entitled to deference and are "presumed to be correct" unless Petitioner rebuts that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Presently, this case is before the court on Respondent's motion for summary judgment (ECF No. 20). Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of summary judgment "'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Phillips v. Nlyte Software Am. Ltd*., 615 Fed. App'x 151, 152 (4th Cir. 2015) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

"In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party." *Sellers v. Keller Unlimited LLC*, 388 F. Supp. 3d 646, 649 (D.S.C. 2019) (quoting *HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996)). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *McKinney v. G4S Gov't Sols., Inc*., 711 Fed. App'x 130, 134 (4th Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party has the burden of proving that summary judgment is appropriate. *Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Lane & Roderick, Inc*., 736 Fed. App'x 400, 400 (4th Cir. 2018) (citing *Celotex Corp.*, 477 U.S. at 322–23). Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule,

set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(c), (e); *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc*., 790 F.3d 532, 540 (4th Cir. 2015).

Petitioner's claims all assert allegations of ineffective assistance of counsel. *See* (ECF No.1). To establish a Sixth Amendment violation for ineffective assistance of counsel, a petitioner must show both that his counsel's representation "fell below an objective standard of reasonableness," and that such representation caused him to suffer prejudice. *Strickland v. Washington*, 466 U.S. 668, 688–92. To establish that he or she has suffered such prejudice, a petitioner must show that there was a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. For habeas review, the key question is whether the state court's application of *Strickland* was unreasonable. *See United Harrington v. Richter*, 562 U.S. 86, 101 (2011). A "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.*

In this case, Petitioner filed objections to the Report, (ECF No. 24), and Respondent filed a Reply, (ECF No. 25). The court will take each objection in turn.

### Ground One: Failure to notify of right to testify at <u>Denno</u> Hearing

As to Ground One, Petitioner argues that the magistrate judge's determination "overlooks the evidence in the trial record and PCR record suggesting that Petitioner did not understand his right to testify at the *Denno* hearing," – namely that "Trial counsel testified at PCR that there was such a 'disconnect' between Petitioner and the events in his life that he sought, unsuccessfully, to have him evaluated" and that Petitioner "did not understand that he could testify at the *Denno* hearing but not at trial[.]" (ECF No. 24 at 2). Petitioner argues that this distinction, "coupled with

the Petitioner's age of only 17 [and] his lack of education, the trial court could have ruled in favor of Petitioner during the *Denno* hearing." *Id.*

In looking at the transcript from the *Denno* hearing, the court notes that Trial Counsel informed the court that Petitioner did not wish to testify and that trial counsel had explained his right to testify. (ECF No. 19-1 at 26). The Trial Judge confirmed this on the record, asking specifically, "Do you understand that if you wish to testify in this hearing what you said would not be heard by the jury. It's only for my purposes. You understand that?" *Id*. Petitioner responded in the affirmative. The Trial Judge then asked Petitioner four times to confirm that Petitioner did not wish to testify, and, each time, Petitioner responded that he did not want to do so. *Id*. at 26–27. Furthermore, at the PCR hearing, Trial Counsel indicated that prior to the *Denno* hearing, he explained that any testimony "would be made outside the presence of the jury, therefore, he didn't have to worry about the jury hearing anything said in the . . . hearing, and he said he did not wish to testify." (ECF No. 19-2 at 27).

The PCR Court considered this in reaching his ultimate determination. He also considered the fact that Trial Counsel "explained that [Petitioner] was a pleasant client and never argumentative, but otherwise refused to discuss or acknowledge the case against him," and that his "detachment was so great that Trial Counsel sought to have [Petitioner] mentally evaluated, but his motions were rejected" by two separate judges. (ECF No. 19-3 at 14). Ultimately, the PCR Judge determined that Petitioner understood his right to testify at the *Denno* hearing and not trial, noting that "[b]oth Trial Counsel and the Court repeatedly endeavored to impress the fact upon him and could do no more to explain it." *Id*. at 15. PCR Court also referenced Petitioner's age, which did not sway the PCR Judge's determination. *Id.* Furthermore, the PCR Court also indicated that even if Petitioner's testimony at the PCR hearing was taken as true, it "did not establish that

his statement [to law enforcement] was not voluntarily given" and that Petitioner had actually affirmed he had "knowingly and deliberately g[iven] the statement to law enforcement – [but] he merely asserts that it was a fabrication." *Id.* at 16.  The PCR Court explained that this gave no bearing on the legality of the statement, and in fact, Petitioner "admitted to understanding he had the right to remain silent," so even if he had testified at the *Denno* hearing, such testimony "would not have changed the outcome of that hearing, such that his confession would have been excluded at trial." *Id.* The PCR Court went further to explain that it did not find Petitioner's testimony that he merely fabricated his statements to be credible, and that his "detached admissions of prior dishonesty do not compel this Court to conclude he was previously dishonest, but only that his testimony at the evidentiary hearing is not to be afforded credible weight." He further indicated that if Petitioner had offered the same evidence at the *Denno* hearing, the PCR Court could "only conclude that the self-destruction of his own credibility would have more likely harmed his chances of prevailing upon the motion to suppress." *Id.* at 17. As such, the PCR Court determined that Petitioner had failed to establish deficiency or prejudice as to this claim.

The court agrees with the magistrate judge that the PCR Court's detailed and thorough analysis was not an unreasonable application of *Strickland* or an unreasonable determination of the facts, and, for that reason, Petitioner's objection is overruled.  Contrary to what the objections suggest, the PCR Court did not discount Petitioner's age or his mental health. Notably, in denying Petitioner's motion for an evaluation, the court did confirm that Petitioner had no trouble communicating with his attorney, that he understood the charges against him, and that while he had previously been prescribed Adderall for disrupting school, he was no longer in need of medication. (ECF No. 19-1 at 372). Furthermore, at the PCR hearing, Trial Counsel clarified that the reason for his motion was to "see if there was something [he] was missing" and not any specific

concern. (ECF No. 19-2 at 49). Accordingly, the court finds that the failure to have Petitioner evaluated did not undermine or render unreasonable the PCR Court's factual findings that Petitioner understood his right to testify at the *Denno* hearing. Furthermore, the court finds that the facts presented support the PCR Court's determination that counsel did not act deficiently, and the court finds that the PCR Court's application of *Strickland* was not unreasonable. Accordingly, the court overrules the objection and finds summary judgment is appropriate on this ground.

### Ground Two: Failure to Object to Jury Instruction

As to Ground Two, Petitioner objects to the magistrate judge's ultimate determination, arguing that while the magistrate judge "ruled that the trial judge did not instruct the jury it could infer malice from a deadly weapon[,]" the instruction was still impermissible as a practical matter because "[t]he conduct showing a total disregard for human life, factually in this case, is the use of a deadly weapon." (ECF No. 24 at 3). Accordingly, Petitioner argues that the Trial Court's instruction that "malice may be inferred from conduct showing a total disregard for human life" is, by "logical extension" an "impermissible instruction without using the magic words 'use of a deadly weapon.'" *Id.*

However, in looking at South Carolina case law, the court finds no instance where, given the same instruction given here, courts made such "logical extension" and found the instruction impermissible. *See, c.f.*, *State v. Brooks*, 837 S.E.2d 236, 242 (S.C. 2019) (stating that it was harmless error where the court gave both the impermissible deadly weapon instruction and an instruction allowing for malice to be inferred from "conduct showing total disregard for human life" because the jury could have found that the defendant's conduct showed a total disregard for human life); *State v. Cottrell*, 808 S.E.2d 423, 644 (S.C. 2017) (indicating that the trial judge's instruction "only that malice could be inferred from conduct showing a total disregard for human

life" complied with the law set forth in *Belcher*, which was the precedent at the time); *State v. Belcher*, 685 S.E.2d 802, 804 (holding that an instruction that malice may be inferred from a deadly weapon is no longer good law in South Carolina "where evidence is presented that would reduce, mitigate, excuse or justify the homicide").

Furthermore, the court disagrees with the Petitioner that the weapon was the only evidence that could possibly support a finding of malice. In looking at the trial transcript, the court notes that it was presented that when asked why he shot the victim, the Petitioner indicated to law enforcement that he "recognized him from some difficulties [he] had [with him] in Hemingway four years earlier in 2007. It was over money, drugs, and girls." (ECF No. 19-1 at 90). The transcript reflects that a video of Petitioner's confession was played for the jury,[7] and in closing arguments trial counsel indicated that on that tape, the jury heard Petitioner admit that he knew the victim and had had "beef" with him, that he had cocked the gun prior to entering the bathroom to seek out the victim, that he purposefully followed the victim "real slow," and that he indicated "I got this f***er." (ECF No. 19-1 at 288).

Based on these facts, the court finds that Petitioner's objection indicating that the instruction given was improper despite not using the "magic word" of "weapon" because the only evidence that could support a finding of malice was the firearm, and that, therefore, the instruction given was effectively an impermissible instruction to be without merit. Accordingly, the court agrees with the magistrate judge that the PCR Court's determination was not an unreasonable application of *Strickland*, nor was it an unreasonable determination of the facts. Therefore, the court overrules the objection and finds summary judgment is appropriate on this ground.

### Ground Three: Failure to Object to "Search for the Truth" Comments

---

[7] This court does not have access to the video played at trial.

As to Ground Three, Petitioner objects to the magistrate judge's ultimate determination, arguing that the magistrate judge "failed to recognize that although *Beaty* had not been decided at the time of Petitioner's trial, the law on which *Beaty* is grounded has been around for decades." (ECF No. 24 at 3). Additionally, Petitioner argues that the use of the phrase "search for the truth" in conjunction with the following statement that it is "'not only the right of the State to punish those that it feels has or have violated the laws of this State, but also that we have the liberty of this Defendant at stake,' improperly suggests to the jury a balancing of interests more akin to a preponderance of the evidence standard[.]" *Id.* at 4. Accordingly, Petition objects to there being no finding of prejudice due to the "context that the trial judge uttered this statement." *Id.*

In South Carolina, "[t]he standard of review of an ambiguous jury instruction is whether there is a reasonable likelihood that the jury applied the challenged instruction in a way that violates the Constitution." *State v. Pradubsri*, 803 S.E.2d 724, 729 (2017). However, in reviewing a charge, the court must "consider the court's jury charge as a whole in light of the evidence and issues presented at trial." *Id.* (citations omitted). "If, as a whole, the charges are reasonably free from error, isolated portions which might be misleading do not constitute reversible error." *Id.* "A jury charge is correct if, when the charge is read as a whole, it contains the correct definition and adequately covers the law." *Id.*

Here, the language Petitioner challenges is from the Trial Judge's opening remarks to the jury:

> I want to thank you for being here and serving as jurors in this court. It seems that every time we turn on the TV there is a trial going on of some sort [or] some sort of TV show or movie, and every one of those trials seem to be the most riveting and exciting things that you can imagine. In reality that's not necessarily how a trial really goes. The search for the truth is often tedious, repetitive and slow and that's as it should be for we have here at stake this, this day, this week is not only the right of the State to punish those that it feels has or have violated the laws of this Sate, but also we have

the liberty of the Defendant at stake and he has plead not guilty to the indictment that I presented to you earlier, and again, I want to make sure that you understand that this indictment is not evidence in this case, it is just the document by which he is charged. It puts him on notice of the charge, and when he pleads guilty or not guilty as he has done in this case, the burden shifts to the State to prove to you beyond a reasonable doubt that he is guilty of the offense for which he is charged and the goal of this trial is to – for you to determine whether or not the State has met its burden of proof, that is whether or not the State has convinced each and every one of you of the Defendant's guilt beyond a reasonable doubt.

(ECF No. 19-1 at 77).[8]

The PCR court determined as follows:

The Court finds [Petitioner] has failed to show any deficiency on the part of Trial Counsel or any prejudice from the deficiency alleged. [The Trial Judge's] remarks did not impress upon the jury any impression that their duty was to seek the truth, but rather (1) explained that real trials were much more time intensive than those reflected on television, and (2) that jurors had wide discretion in making credibility determinations. The "truth seeking" language employed by [the Trial Judge] appears to be precisely of the kind held to be acceptable in *Aleksey*, and substantially less concerning than the comments addressed in *Beaty*, which affirmatively described a trial as "a search for the truth in an effort to make sure that justice is done." *Beaty*, 423 S.C. at 32, 813 S.E.2d at 505. If the comments at issue in *Beaty* were not sufficient to prejudice the defendant, the comments at issue here absolutely do not prejudice [Petitioner]. Accordingly, the Court finds no deficiency on the part of Trial Counsel by way of this allegation, nor prejudice therefrom, and [Petitioner's] request for relief is DENIED.

ECF No. 19-2 at 109. While the PCR Court makes a finding as to there being no deficiency

in failing to object, this analysis really focuses on the prejudice prong of *Strickland*.

Accordingly, the court will similarly focus on the prejudice prong as to this claim, as a

---

[8] Petitioner's objections do not appear to disagree with the magistrate judge's determination as to the "determine what the truth is" language in the Trial Judge's opening solely in regards to witness credibility. *See* (ECF No. 19-1 at 77 – 78). The objections solely focus on the "search for the truth" language in conjunction with the purpose of the trial. *See* (ECF No. 24). As noted herein, in *Aleksey*, the Supreme Court of South Carolina specifically held such error to be harmless in an instance when the language was charged in conjunction with a credibility of witnesses charge. 538 S.E.2d at 251–53.

Petitioner must show *both* deficiency *and* prejudice to be entitled to relief, so failure to establish prejudice is fatal to an ineffective assistance of counsel claim.

The undersigned finds that even assuming that Petitioner's objection indicating that *Beaty* simply solidified a notion that had been around for decades that such "search for the truth" language risked impermissibly shifting the burden of proof in criminal cases, the court finds that the PCR Court's determination that such instruction did not prejudice the Petitioner was reasonable considering the facts, and, therefore, his application of *Strickland* was not unreasonable. South Carolina courts have determined an error to be harmless even though the "search for the truth" language may "run the risk of unconstitutionally shifting the burden of proof to defendant" in cases where the jury instructions, taken as a whole, make it clear to the jury that the defendant must be found guilty beyond a reasonable doubt, and that the state carries the burden of proof. *See, e.g., Pradubsri*, 803 S.E.2d 724, 730 (noting that the trial court used "truth-seeking" language but that the court had referenced the "beyond a reasonable doubt" standard at least twenty times in the jury instructions and did not reference the "disfavored language" regarding "moral certainty" and the "real reason" as set forth in *State v. Manning*, 409 S.E. 2d 372 (1991)); *Beaty*, 813 S.E.2d at 506 (looking to the entire trial record and the entirety of the judge's comments and finding that though the language should have been avoided, the defendant had not shown any prejudice); *State v. Needs*, 508 S.E.2d 857, 866 (1998) (ultimately upholding a conviction because the circuit court had reiterated the "beyond a reasonable doubt" standard twenty-six times and the remaining portions of the jury charge did not include disfavored language set forth in *Manning*). Here, as the magistrate judge pointed out in the Report and as the PCR Court cited in its order, the Trial Judge repeatedly reminded the jurors, both in his opening remarks and in the jury instructions, that the burden of proof remained with the State and that the State must prove Petitioner's guilt beyond a

reasonable doubt. *See* (ECF No. 20 at 20) (citing ECF No. 19-2 at 108). In fact, the very paragraph of which Petitioner complains, though conveniently cut short, clarifies this burden. (ECF No. 19-1 at 77).

After thoroughly reviewing the Trial Judge's opening remarks and jury charge, the court finds that the PCR Court's determination was not an unreasonable application of the law, nor was it an unreasonable application of *Strickland*. The Trial Court reiterated throughout the record that the burden was on the State to prove guilt beyond a reasonable doubt. The PCR Court examined the charge and remarks as a whole and ultimately determined that as a whole, the jury charge did not run the risk of confusing the jury as to what they needed to reach a guilty verdict. Accordingly, the court overrules Petitioner's objection and finds that summary judgment is appropriate as to this claim.

### Ground Four: Handling of Witness

Finally, as to Ground Four, Petitioner objects to the ultimate disposition of the Report, arguing that the witness gave "multiple statements to various people" and that "Trial Counsel could not articulate a strategic reason why he did not ask more questions about these previous, contradictory statements which go to the heart of the matter in this trial – the identity of the shooter." *Id.* at 4–5. Petitioner argues that this witness was "the only non-co-defendant witness who testified to seeing [him] with a weapon" and the "only witness to testify he was in the bathroom with the victim[,]" and, as such, "[f]ailing to impeach this vital and damaging testimony certainly prejudiced Petitioner." *Id.* at 5.

As an initial matter, the court notes that, as noted by the PCR Court and the magistrate judge, during cross examination Holmes did admit that initially she believed her uncle, Laverne, had shot the victim. (ECF No. 19-2 at 101) (citing Trial Tr. 138–39). Accordingly, the jury was

very much aware that Holmes had made conflicting statements to law enforcement. Additionally, as the magistrate judge, there exists the presumption that counsel "'made all significant decisions in exercise of reasonable professional judgment[,]'" *id.* (quoting *Cullen v. Pinholster,* 563 U.S. 170, 196 (2011)), and to overcome such presumption, Petitioner would need to show "that no fair-minded jurist" could find Trial Counsel's reasons for his or her decisions "to be sound trial strategy[,]" *id.* (citing 28 U.S.C. § 2254(d); *Harrington v. Richter*, 662 U.S. 86, 105 (2011)).

In reviewing this claim, the PCR Court found:

> [Petitioner] has failed to meet his burden of showing ineffectiveness. [Petitioner's] claim appears to take two forms: failure to adequately cross-examine Holmes with her prior statements, and failure to elicit from her more favorable testimony. As to Trial Counsel's use of Holmes' first statement to authorities, he did confront Holmes with her initial statements to first responders, which she ultimately admitted, such that he could not have introduced any extrinsic evidence of the first statement. As to Trial Counsel's use of Holmes' statement to the private investigator, Holmes['s] testimony was largely consistent, such that her prior consistent statement would have constituted hearsay. Additionally, Trial Counsel articulated a valid strategic reason to not introduce the statement to the private investigator—it was of limited value to his client and would have cost him the final argument. As to Trial Counsel's use of Holmes' second statement to authorities, the summation provided to Trial Counsel inculpated his client more than Holmes' trial testimony, where she never identified [Petitioner] as the shooter, such that any attempt to bring it in would have doubtlessly harmed [Petitioner's] defense. As to Trial Counsel's failure to elicit more favorable testimony, attorneys cannot choose the facts available to them or make a witness testify in a particular fashion. Holmes testified in a reasonably consistent manner that [Petitioner] was present at the club on the night of the shooting, was armed with a gun, and was in the proximate vicinity of the victim. There is nothing before this Court to suggest she was ever a potential alibi witness. Assuming for the sake of argument that Holmes repeatedly fabricated a story and could today provide [Petitioner] an alibi, she did not testify at the evidentiary hearing as would be necessary for [Petitioner] to meet his burden of proving so. Finally, it is difficult to discern how any change in Holmes' testimony, realistic or fantastic, could have changed the outcome at trial where the other evidence which would have been unaffected conclusively pointed to [Petitioner's] guilt: Cameron Green testified [Petitioner] confessed to shooting Myers while being assailed by Lavern[e], [Petitioner] himself confessed to law enforcement, and the bullet recovered from the victim was of the same caliber as the

> revolver identified by [Petitioner] as the one he used in the killing. For all of these reasons, the Court finds [Petitioner] has failed to demonstrate any deficiency in Trial Counsel's handling of Holmes as a witness, or any reasonable possibility that but for the deficiencies alleged the outcome at trial would have been different, and his request for relief by way of this allegation is DENIED.

(ECF No.19-2 at 103–04). In reviewing the PCR Court's determinations, the court finds that the PCR Judge specifically considered Trial Counsel's purported reasons for his decisions made at trial regarding the handling of this witness and determined that based on these purported reasons, Petitioner had not overcome the presumption that such decisions were sound and strategic. Accordingly, the court agrees with the magistrate judge that the PCR Court's determination was not an unreasonable application of *Strickland*, nor did the PCR Court's findings derive from an unreasonable interpretation of the facts.

Furthermore, the court agrees with the PCR Court's prejudice analysis and finds it to be sound under *Strickland*. Of particular note regarding the objections, while Petitioner argues that Holmes was the only non-co-defendant to testify that Petitioner had a weapon and was the only witness to testify that Petitioner had been in the bathroom with the victim, in his taped confession, which was shown at the trial, the Petitioner himself admitted to having a firearm and to being in the bathroom.[9] Accordingly, the court agrees with the magistrate judge that the PCR Court's determination was not an unreasonable application of *Strickland* nor based on an unreasonable determination of the facts. Therefore, the court overrules Petitioner's objection and finds that summary judgment is appropriate as to this claim.

## CONCLUSION

Thus, having thoroughly reviewed the Report and the record under the appropriate standards and, finding no error therein, the court **OVERRULES** Petitioner's objections (ECF No.

---

[9] At trial, the Petitioner challenged the admissibility of such confession, and a *Denno* hearing was held. Ultimately, the confession was allowed into evidence. See (ECF No. 19-1 at 32–33).

24), **ADOPTS** the Report in its entirety (ECF No. 23) and incorporates it herein. Accordingly, Respondent's Motion for Summary Judgment (ECF No. 20) is **GRANTED.**

A certificate of appealability will not issue absent "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A prisoner satisfies this standard by demonstrating that reasonable jurists would find both that his constitutional claims are debatable and that any dispositive procedural rulings by the district court are also debatable or wrong. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001). In the instant matter, the court finds that the petitioner failed to make a "substantial showing of the denial of a constitutional right." Accordingly, the court declines to issue a certificate of appealability.

**IT IS SO ORDERED.**

s/Timothy M. Cain
United States District Judge

Anderson, South Carolina
September 28, 2023